IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

Elvis Hanes,

      Plaintiff,

v.

Scott Frakes, Director of NDCS,
(personal and official capacity);
Rosalyn Cotton, Chairman, Nebraska
Board of Parole, (personal and
official capacity); Layne Gissler;
Bob Twiss; Mark Langan; Habib Olomi,
members, Nebraska Board of Parole,
(personal and official capacities);
John M. Friend, clerk of the Douglas
County District Court, (personal and
official capacity),

      Defendants.

Case number:  8:22 CV 156

COMPLAINT AND

REQUEST FOR INJUNCTION

OFFICE OF THE CLERK
2022 APR 22  AM 11:43
FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

## COMPLAINT AND REQUEST FOR INJUNCTION

COMES NOW the Plaintiff, Elvis Hanes, pro se, in necessity, and hereby
files this Complaint and Request for Injunction pursuant to 42 U.S.C. §§1983;
1985; and 1986 for the following reasons to wit:

### BACKGROUND

On June 16, 2021, the Plaintiff, Mr. Hanes, was sentenced to 2 to 4 years
imprisonment for attempted first degree sexual assault. He was sent to DEC on
or about 6/21/21. On or around 7/22/21, Mr. Hanes was informed that he had no
programming recommendations. On 7/28/21, he was classified as 3A custody level
and assigned to the Omaha Correctional Center. On 8/21/21, Mr. Hanes had his
initial parole review where they indicated that they would see him in November
to make sure that special services was making arrangements via the Interstate
Compact Agreement to serve his sentence in his home state of Minnesota. On or
about 9/4/21, Mr. Hanes arrived at the Omaha Correctional Center. On or about
10/4/21, he was recommended for outpatient alcohol treatment upon release from
prison, which was the only recommendation for any treatment up to this point.
On or about 11/5/21, he received a letter from CSORT recommending the outpatient
Healthy Lives Program. On or around 11/15/21, Mr. Hanes went before the Parole
Board, at which time he was informed that he had to complete oHelp, and was

( 1 )

deferred for one year. The Dialectic Behavioral Therapy Skills Training program, hereinafter referred to as DBT, is the core of the oHelp program, and the main focus of this complaint.

On or about 12/5/21, Mr. Hanes signed an agreement to enroll in the oHelp program. Sometime in January, he researched the program curriculum, and found the material to be offensive to his religious beliefs. Mr. Hanes is Jewish, and the Bible is the source of his religious tenets. On or about 2/11/22, he met with the head of CSORT, Dr. Jeff Melvin, to conduct his oHelp pretreatment assessment. He expressed his religious objections to certain elements of the program at this time. Dr. Melvin warned that further objection would result in failure to complete the program. Mr. Hanes then filed an informal grievance concerning his religious and equal protection objections at this time. On 2/26/22, he received a response stating that the oHelp program did not violate Mr. Hanes' First Amendment rights. On 2/27/22, Mr. Hanes continued the grievance process. On 3/17/22, he received a response stating that clinical treatment is voluntary, and failure to complete it could impact work release and parole opportunities. This response failed to address the First Amendment issue altogether. Mr. Hanes has exhausted this administrative remedy.

On 3/7/22, Mr. Hanes started the oHelp program, despite his objections. He expressed his objections to the facilitators on 3/7, 3/9, and on 3/14. He also sought other mental health and religious counsel regarding his concerns during this time. On 3/15/22, oHelp facilitator, Mr. Anderson, summoned Mr. Hanes to inform him that he was being placed on probation, and asked him to sign a contract agreeing to abide by the following terms: 1) he would no longer file grievances regarding the oHelp program; 2) he would no longer seek counsel from other employees outside of the oHelp program facilitators, which was referred to as "staff splitting"; and 3) that he would respectfully communicate his needs and concern with his oHelp facilitators. Mr. Hanes maintained a copy of this contract, but refused to sign it. (E1) Yard Corporal Florez was a witness to this meeting.

The following day, on 3/16/22, Mr. Hanes attended his scheduled oHelp class, at which time Mr. Anderson requested a private audience. Mr. Hanes requested that a yard Corporal be present as a witness, at which time Mr. Anderson became angry and directed Mr. Hanes to leave. Later that day, Dr. Melvin found Mr. Hanes on the prison yard, and informed him that the CSORT team would be meeting on 3/21/22 to review his case. Corporal Abould was witness to this exchange. Mr. Hanes asked Dr. Melvin if CSORT could offer a secular program as an alternative,

or remove the treatment recommendation from his file. Dr. Melvin informed him that CSORT would not make such a change. On 3/23/22, Dr. Melvin gave Mr. Hanes a letter stating that he was officially removed from oHelp, and that the recommendation would remain in place. Mr. Hanes could request to be considered for reentry into the program in 90 days, after his parole eligibility date. In this letter, Dr. Melvin stated, "as you know, not completing recommending [sic] treatment impacts work release and parole options." (E2)

In February of 2022, Mr. Hanes sent a letter to the Parole Board requesting a certified transcript of his November hearing, and to request the reason why he would not be considered for parole on his eligibility date in May of 2022. On 3/10/22, Mr. Hanes received a letter from Rosalyn Cotton, Chairperson of the Nebraska Board of Parole, which requested in pertinent part that Mr. Hanes "please complete [his] Sex Offender Treatment Program and watch [his] institutional behavior in order to be considered for parole." (E3) On 3/26/22, Mr. Hanes wrote another letter noting his religious objections, offering several examples, and requesting a review by a majority of the board to be considered for release on May 13, 2022, because CSORT vehemently refused to remove his oHelp recommendation or offer a secular alternative.

### STATEMENT OF CLAIM

The Nebraska Department of Corrections has recommended that Mr. Hanes participate in state-sponsored and endorsed religious and philosophical indoctrination, or the Nebraska Board of Parole will deny him parole in violation of his rights under the 1st, 6th, and 14th Amendments to the Constitution of the United States, and Article 1, §§4 and 11 of the Constitution of the State of Nebraska.

### (1) DBT SKILLS TRAINING MANUAL ADMISSIONS OF
### SPIRITUAL AND PHILOSOPHICAL FOUNDATIONS

The Dialectic Behavioral Therapy Skills Training program is the foundation of the oHelp program, teaching a philosophy that is used throughout. The author and creator of the DBT Skills Training Manual, Marsha M. Linehan, claims to be a Zen master and "teaches mindfulness and contemplative practices via workshops and retreats for health care providers." She explains that the mindfulness skills "are a product of my 18 years in Catholic schools, my training in contemplative prayer practices through the Shalem Institute's spiritual guidance program, and my 34 years as a Zen student and now as a Zen master." DBT Skills Training Manual v-viii (2nd ed. 2015). ISBN 978-1-4625-1699-5

(3)

Mindfulness skills are central to DBT (hence the label "core" mindfulness skills
for the first group of skills described below). The core skills are the first
skills taught, and they underpin and support all of the other DBT skills. They
are reviewed at the beginning of each of the other three skill modules and are
the only skills highlighted throughout the entire treatment. DBT mindfulness
skills are psychological and behavioral translations of meditation practices
from Eastern spiritual training. DBT Skills Training Manual 151 (2nd ed. 2015).

You do not need to be spiritual to teach mindfulness practice from a spiritual
perspective. However, I suggest NOT TEACHING IT if none of your participants
are spiritual. Mindfulness emerged from spiritual contemplative practices. As
noted in earlier discussion of mindfulness, mindfulness is a practice that is
nondenominational and transconfessional (i.e. it is compatible with an array of
beliefs and traditions). Thus it is important to recognize that the "ultimate
reality" that the spiritual person seeks to encounter can go by the name of God,
Yahweh, the Great Spirit, Allah, Brahman, Atman, "no self," "emptiness," "essential
essence," "essential nature," "the ground of being," "higher power," or a wide
variety of other names. It is important for skills trainers to assist participants
in linking the skills here to their own practices and terms. From a spiritual
perspective, mindfulness skills bring together the material and the mystical--
form and emptiness as one. Id. at 157 (emphasis added)

The focus on mindfulness from a spiritual perspective is included for a number
of reasons. Including handouts on mindfulness from a spiritual perspective provides
an avenue for helping clients strengthen their own spirituality and integrate it
into their practices of mindfulness. In contrast to the psychological goals of
mindfulness, the goals of mindfulness from a spiritual perspective include
experiencing reality as it is (something that is defined differently across cultures
and religious practices), cultivating wisdom, letting go of attachments and radically
accepting reality as it is, and increasing love and compassion toward self and
others. For many, the practice of mindfulness also includes reflectiveness and
the cultivation of ethical qualities. A spiritual perspective on mindfulness is
designed to include every person. It is important here to recognize that spirit-
uality can cover a vast terrain-- from the community as a higher power (as is
often said in 12-step groups), to humanistic views, mystical experience, religious
practices, and (in DBT) WISE MIND. Id. at 155-56 (emphasis added)

(4)

In conclusion, the Mindfulness module is the core of this training program. It is clearly based in spiritual and philosophical ideology, and requires belief in a "higher power," just like a 12-step program. This "higher power" is referred to as "Wise Mind" in this program. The focus of this training is centered in spirituality, and the author does not claim to have developed this program as a result of her training in psychopathology. As such, NDCS recommendation that Mr. Hanes participate in this program should be removed from his file and his refusal to participate should be precluded from consideration by the Parole Board in granting or denying parole in order to protect his First Amendment rights.

## (2) ENDORSEMENT OF RELIGIOUS OR PHILOSOPHICAL BELIEF SYSTEM BY THE STATE

Our cardinal freedom is one of belief; leaders in this Nation cannot force us to proclaim our allegiance to any creed, whether it be religious, philosophic, or political. Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004).

The DBT program is laced with Buddhism and Zen teachings. Even if the DBT Skills were merely "influenced" by Zen Buddhism, Ms. Linehan has not changed the vernacular or liturgy. Expressions such as "observe your feelings," "the middle path," "mindfulness," and "acceptance" are used throughout the training program and are at the core of Zen Buddhism. See exhibit 7 and 8.

In "Make Your Mind an Ocean," by Lama Yeshe ISBN 1-891868-03-9    on page 58, Lama is asked, "what are the aims of Buddhism?" He replies, "an absence of partiality or bias." In the DBT Skills Distress Tolerance Handout, the exercise recommends to "observe but do not evaluate your thoughts. Let go of judgments" (E5). This similarity is obvious.

In a book published by the Buddhist Association of the United States, "The Four Noble Truths," by Venerable Ajahn Sumedho                   on page 37, he states, "you cannot make yourself realize an insight by a willful act, instead the mind should be willing." Similarly, the Distress Tolerance Handout 13 discusses willfulness versus willingness, and explains how and why you should "replace Willfulness with Willingness" (E6). Again, the language is the same. Also, in "The Four Noble Truths," on page 62, he states that "wise mind is rational versus emotional mind." The Mindfulness Handout 3 is literally a visual depiction of this concept (E7). The State is endorsing this belief system by considering it's completion in determining parole eligibility or release on parole.

## (3) SPECIFIC BIBLICAL OBJECTIONS

The Mindfulness and other various handouts recommend meditation and seeking advice and guidance from the "wise mind" (E9). The Mindfulness Handout 3A outlines a chanting/ trance-inducing exercise recommending that the patient "breathing in, say to yourself, 'Wise'; breathing out, say 'Mind,'" and to "continue until you sense that you have settled into Wise Mind." Then while "breathing in, silently ask Wise Mind a question"; and "breathing out, listen for the answer" (E9). This suggests that Mr. Hanes should view HISELF as his own higher power, but he does not believe in self-worship or that he is his own higher power.

In contrast, the Bible says to "take every thought captive, and make it obedient to God." 2 Corinthians 10:5. It also says "dear friends, do not believe these spirits, but listen to see whether they are from God." 1 John 4:1. In Exodus 20:3, the Bible says that "you shall have no other gods before me." Also in 20:23, it says "do not make any gods to be alongside me."

In Mindfulness Handout 3 it says that "wise mind is: the wisdom within each person" (E7). The Bible says, "fear of the Lord is the beginning of wisdom." Psalms 111:10.

In Distress Tolerance Handout 15, it says to "remember you are not your thoughts" (E5). The Bible says "for as a man thinketh in his heart, so he is" Proverbs 23:7.

In Mindfulness Handout 4A, p.4, it says to make a statement about each sense: "I feel the chair; the chair feels me," and "I hear the heater; the heater hears me" (E10). In Mindfulness Handout 4C, it recommends trying to "see all the ways you are connected to and accepted by" inanimate objects, to "consider what the object does for you," and "its kindness in doing that" (E11). Finally, the Mindfulness Handout 3A, pg.2, references your "third eye," which is a reference to esoteric mysticism (E9).

The Bible says "do not practice divination or seek omens," and "do not turn to mediums or seek out spirits." Leviticus 19:26 and 31. It also says "do not imitate the detestable ways of the nations. Let no one be found among you who practices divination or sorcery, interprets omens, engages in witchcraft, or casts spells, or who is a medium or spiritist, or who consults the dead." Deuteronomy 18:9-11.

Contemplation and the consideration of the kindness or imaginary ability of inanimate objects to sense Mr. Hanes through mindfulness/ meditation is considered to be sorcery and idolizing something other than God, which is against Mr. Hanes' religion. This seriously offends Mr. Hanes normal religious practice of PRAYER

(6)

and contemplation of GOD'S influence, will, and guidance in Mr. Hanes' life.
Again, the mindfulness philosophy permeates the entire DBT Skills Training Program.

## (4) RELIGIOUS DISCRIMINATION

The Court does not think that a State may subject a convict to a rehabilitive
program or procedure that is dangerous to his life or health, or that makes his
overall confinement unduly harsh or rigorous, or that invidiously discriminates
against on an impermissible ground such as religion or race, or that invades
federally protected rights that follow the inmate into the institution.
Rutherford v. Hutto, 377 F.Supp. 268 (1974). See e.g. Procunier v. Martinez,
1974, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224.

While inmates have no constitutional right to early parole, they do have the
right to be free from unconstitutional burdens when availing themselves of
existing ways to access the benefit of early parole. Jackson v. Nixon, 747
F.3d 537 (8th Cir. 2014). It is a tenet of the First Amendment that the State
cannot require one of its citizens to forfeit his or her rights and benefits as
the price of resisting conformance to state-sponsored religious practice. Id.

Resolution of question of what is a religious belief or practice protected by
the free exercise clause does not turn upon judicial perception of particular
belief or practice in question; religious beliefs need not be acceptable, logical,
consistent or comprehensible to others in order to merit First Amendment protection.
Thomas v. Review Bd. of Indiana Employment Sec. Division, 450 U.S. 707, 101 S.Ct.
1425, 25 Fair Empl.Prac.Cas. (BNA) 629 (1981).

On 3/10/22, Mr. Hanes received a letter from Rosalyn Cotton, Chairperson of
the Nebraska Board of Parole, which requested in pertinent part that Mr. Hanes
"please complete [his] Sex Offender Treatment Program and watch [his] institutional
behavior in order to be considered for parole" (E3).

On 3/23/22, Dr. Melvin gave Mr. Hanes a letter stating that he was officially
removed from oHelp, and that the recommendation would remain in place. Mr. Hanes
could request to be considered for reentry in 90 days. In this letter, Dr. Melvin
stated "as you know, not completing recommending [sic] treatment impacts work
release and parole options" (E2).

On 3/26/22, Mr. Hanes wrote a letter to the Parole Board noting his religious
objections, offering several examples, and requesting review by a majority of the
Board to be considered for release on May 13, 2022, because CSORT vehemently refused
to remove his oHelp recommendation or offer a secular alternative (E4). Mr. Hanes
is being denied parole consideration for failure to subscribe to a religious or
philosophical practice or belief system.

## (5) PROGRAMMING IS A PENALTY IMPOSED WITHOUT NOTICE

In discussing whether or not a sanction was a penalty, the Supreme Court in Kokesh v. S.E.C., 137 S.Ct. 1635, 198 L.Ed.2d 86, 85 USLW 4308 (2017), said that, "[a] 'penalty' is a punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offense against it's laws. Whether a sanction represents a penalty turns in part on whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual. Id. A pecuniary sanction operates as a penalty only if it is sought for the purpose of punishment, and to deter others from offending in like manner-- as opposed to compensating a victim for his loss. Id. Similarly, the purpose of treatment of counseling is to deter the same offender from reoffending in like manner. In this case, the State has encouraged participation in religious or philosophical ideology through coercive policy to deter offenders from reoffending.

In discussing whether or not a change in state law with respect to good time or gain credits, amounted to ex post facto punishment, the Supreme Court in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), stated that "[w]e have previously recognized that a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." Cf. Durant v. U.S., 410 F.2d 689, 8 A.L.R. Fed. 753 (1st Cir. 1969)(Trial court in narcotics prosecution erred in accepting guilty plea without first informing defendant that conviction would make him ineligible for parole); United States v. Ross, 464 F.2d 276, 379 (2nd Cir. 1972)(Stating that one would be hard pressed to find a prison inmate who did not see the unavailability of parole as a penalty).

Nebraska law requires treatment and counseling for drug and alcohol related offenses. This treatment is described as a penalty under Neb.Rev.St. §28-416 (15) which states in pertinent part that "[a]ny person convicted of violating this section, if sentenced to the Department of Correctional Services, shall attent appropriate treament and counseling on drug abuse." This statute provides adequate noptice that treatment or programming is a penalty for certain drug or alcohol convictions. In contrast, the penalty described for the crime with which Mr. Hanes was charged, sexual assault under Neb.Rev.St. §28-319 or criminal attempt under Neb.Rev.St. §28-201, does not provide notice of any required treatment. The Legislature included treatment and counseling as a penalty under Neb.Rev.St. §28-416. Therefore, it stands to reason that treatment for sexual offense is a penalty.

In Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974), the Supreme Court said that "[i]t could not be seriously argued that sentencing decisions are made without regard to the period of time a defendant must spend in prison before becoming eligible for parole, or that such decisions would not be drastically affected by a substantial change in the proportion of the sentence required to be served before becoming eligible, parole eligibility can be properly viewed as being determined-- and deliberately so-- by the sentence of the district judge."

When Mr. Hanes entered a plea, it was reasonable for him to presume that, if he behaved himself, he should be eligible for parole in May of 2022. Further, his parole eligibility date was most certainly considered by the sentencing court in imposing a sentence. However, the spontaneous imposition of programming, without adequate time to complete it before his parole eligibility date, has rendered parole unavailable, extending his time in prison, and constitutes ex post facto punishment. This amounts to a substantial change in the proportion of the sentence required to be served before becoming parole eligible, due to circumstances beyond his control. It is also a penalty imposed without adequate notice, and is fundamentally unfair. Therefore, the spontaneous imposition of programming has violated Mr. Hanes 6th and 14th Amendment rights to notice, fundamental fairness, and due process.

## (6) DENIAL OF ACCESS TO THE COURT

On April 4, 2022, Mr. Hanes mailed a Complaint and Request for Injunctive Relief substantially similar to this one, to the Clerk of the District Court of Douglas County, Nebraska (E12)(Tracking# 7009 1410 0002 5692 9070). It was received on or around April 6,7, or 8 (E13). The clerk returned the extra copy of the complaint/ praecipe and the Informa Pauperis Affidavit and indicated that Mr. Hanes forgot to include his 6 month certified account statement (E14).

On April 12, 2022, Mr. Hanes mailed the Complaint and Request for Injunctive Relief back to the Clerk of the District Court of Douglas County, Nebraska (E15). (Tracking# 7009 1410 0002 5692 9100). It was received on April 14, 2022 (E16). As of April 19, 2022, the Clerk of the District Court of Douglas County, Nebraska claims to have NO KNOWLEDGE of Mr. Hanes filing. Mr. Hanes has been denied access to the court in violation of his rights protected by the First Amendment to the United States Constitution.

The clerk of the Douglas County District Court clearly had knowledge of this filing. Nebraska's prison system is currently in an overcrowding emergency, and hundreds of parole eligible inmates are being denied parole for failure to attend programs centered in DBT. It would be bad publicity for Nebraska's courts and lawmakers if the public knew that NDCS is violating the seperation of powers doctrine by imposing additional penalties via coercion, because the Parole Board is denying parole to hundreds of inmates based on a failure to adopt a religious practice or philosophy. The clerk of the Douglas County District Court has recently executed this exact same scheme against other inmates with meritorious claims-- some of which are still pending. It appears that the clerk's office is assisting the State in maintaining the status quo at the expense of our constitutional rights.

## IRREPARABLE INJURY

Mr. Hanes is being denied access to a privilege involving a liberty interest that is generally available, because the Parole Board informed him that he needed to complete the oHelp sex offender treatment program before they would consider him for parole. The core aspects of the oHelp and iHelp programs impose religious tenets and philosophical ideals that are offensive to and interfere with his religious conscience. He never received notice of this aspect of his punishment during any court proceeding, nor was it part of the original sentence imposed. As such, the programming recommendations should be striken from his institutional record, and precluded from consideration by the Parole Board. If this Honorable Court does not grant Mr. Hanes relief, he will suffer religious discrimination and denial of the opportunity for parole on May 13, 2022.

When Mr. Hanes sought relief in the District Court of Douglas County, Nebraska, he was denied access to the court, but has otherwise exhausted his administrative remedies. This has caused unnecessary delay, and forced him to file in this Court where the filing fees are much higher.

## RELIEF REQUESTED

In an unpublished federal case in the district court of Nebraska, the court was willing to entertain injunctive relief with regard to this exact issue except that the plaintiff "failed to allege facts indicating when he is eligible for parole; whether he is required to engage in certain programming to be eligible

for parole; the name of the required program at issue; the religious elements
of the program he finds objectionable; and that he will necessarily be denied
parole if he does not complete the program such that the 'threatened injury' is
'certainly impending' Id. at 876. Timmens v. Frakes, 2020 WL1890579. Mr. Hanes
has satisfied all of these elements.

WHEREFORE Mr. Hanes Prays for an Order granting injunctive relief requiring the
Nebraska Department of Correctional Services to remove the oHelp treatment program
recommendation from his institutional file; to enjoin the Board of Parole from
considering any programming recommendations not imposed as part of a sentence;
and to grant Mr. Hanes a parole hearing on or around May 13, 2022. If the Court
finds that the State is promoting or tending to promote the endorsement of a
religious, political, or philosophical ideology, Mr. Hanes requests that NDCS,
under the direction of Scott Frakes, be enjoined from promoting the oHelp and
iHelp programs and any other programs that rely upon the principals of spirituality
and philosophy encouraged by the DBT Skills Training foundational system. Further,
Mr. Hanes requests reimbursement for costs and attorney fees; damages in the
amount of $1,000,000.00 _____ for the denial of access to the court; any
other relief that the Court deems necessary; and that the matter be set for hearing
via video conferencing as he is currently incarcerated.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the
best of my knowledge, information, and belief that this complaint: (1) is not
being presented for an improper purpose, such as to harass, cause unnecessary
delay, or needlessly increase the cost of litigation; (2) is supported by existing
law or by a nonfrivolous argument for extending, modifying, or reversing existing
law; (3) the factual contentions have evidentiary support of, if specifically so
identified, will likely have evidentiary support after a reasonable opportunity
for further investigation or discovery; and (4) the complaint otherwise complies
with the requirement of Rule 11.

Date of signing: 4-19-22

Signature of Plaintiff: _ER Hanes_

Printed Name of Plaintiff: Elvis Hanes

Elvis Hanes #213363
2320 Avenue J
Omaha NE 68110


To: US District Court, District of Nebraska
111 s. 18 Plaza # 1152
Omaha NE 68102


Re: Complaint and Request for Injunction
Please find enclosed:
1) Complaint and Request for Injunction with Exhibits
2) Praecipe for Summons / Personal Service


To whom it may concern, I am currently incarcerated
and I have asked a family member to track this
filing so he can pay the filing fee via phone.
If your office could either wait a day or so
for his call, or contact him when this arrives
so he can pay. I thank you.
His contact info is:
Captain Thomas Hanes Sr. (651) 271-6693


Again I thank your office if you can work
with my present situation
                              Sincerely

RECEIVED

APR 22 2022

CLERK
U.S. DISTRICT COURT

# NEBRASKA
## Good Life. Great Mission.

**DEPT OF CORRECTIONAL SERVICES**



**Pete Ricketts, Governor**

### Healthy Lives Program – Notice of Placement on Monitored Status

Name: Elvis Hanes #213363

Participation in your current Mental Health program was reviewed by the Treatment Team, and members of the Clinical Sexual Offense Review Team, and at this time you are being placed on a Monitored Status. The Treatment Team identified the following expectations during your Monitored Status period:

1. oHeLP is voluntary. Continued grievances about your beliefs toward oHeLP are not helpful towards your participation in treatment. You can refuse oHeLP at any time.

2. Staff splitting is another treatment interfering behavior and will not be tolerated. If you have any concerns related to your specific oHeLP treatment, that needs to be addressed with your oHeLP facilitators.

3. Hostility toward oHeLP facilitators is not helpful toward your participation in treatment. You will address facilitators respectfully when interacting with them and will strive to resolve treatment interfering behavior by communicating your needs and concerns assertively (utilize your paper on communication styles).

Your Monitored Status will begin on 3/14/2022 and remain in effect until 05/14/2022; at which time your progress will be reviewed by the Treatment Team. Please be aware that your Monitored Status may be extended in addition to other potential outcomes such as a referral to the Clinical Sex Offender Review Team (CSORT).

By signing below, you acknowledge this Monitored Status and agree to abide by the above conditions:

_____

Elvis Hanes #213363

_____

Date

_____

Witness

_____

Date

Xc; MH file

Scott R. Frakes, Director
**Dept of Correctional Services**
P.O. Box 94661 Lincoln, NE 68509-4661
Phone: 402-471-2654  Fax: 402-479-5623

**corrections.nebraska.gov**

E1

# NEBRASKA

Good Life. Great Mission.

**DEPT OF CORRECTIONAL SERVICES**



**Pete Ricketts, Governor**

To: Elvis Hanes, #213363

Location: OCC HU2D 10L
From: Clinical Sex Offense Review Team (CSORT)
Date: 3/21/2022

Dear Mr. Hanes:

The Clinical Sex Offense Review Team (CSORT) reviewed your case on 3/21/2022 upon the recommendation of your o-help treatment team and knowledge of treatment-disruptive behavior that has been reported by various mental health staff. You started o-help on 3/7/2021, but you were struggling to manage risk factors even prior to starting and engaging in behavior that was disruptive to your living unit as well as to patients who were in treatment. You and I met on 2/11/2022 to conduct your o-help pretreatment assessment. Following that meeting and after I warned you that continuing your treatment-interfering behaviors would result in lack of success in treatment, you assured me that I would not have any problems with you.

Due to your behavior disrupting the group process in o-help, facilitators of your group placed you on Monitoring Status on 3/14/2022. Concerns were reported about hostility being expressed against facilitators and staff splitting (e.g., approaching various mental health therapists and making the case that you should not be in treatment due to it being satanic-oriented and a violation of your religious rights). You refused to sign the Monitoring Status Agreement. The Agreement echoed what I and other providers shared with you about o-help being voluntary. Facilitators reported that you shared with them that you would increase your disruptive behavior and write grievances about the group being against your religious beliefs and violating your rights. Staff splitting was addressed in the Monitoring Status agreement. On 3/15/2022, you approached our Clinical Program Manager in a harassing manner. The third concern identified in your Monitoring Status Agreement was to stop hostility toward o-help facilitators, including communicating any concerns directly with facilitators in a respectful manner. One of the facilitators tried to meet with you in private before group started on 3/16/2022 to remind you of expected behavior during group. He reported that you told him that you planned to continue your same behaviors of concern and would in fact increase them.

Lastly, I had a conversation with you about treatment on 3/16/2022. You stated that the only peaceful resolution to the problem was for CSORT to offer a "secular" version of o-help that did not violate your religious beliefs or to remove your treatment recommendation. I shared that CSORT was not willing to make either change. You also indicated that the clinical treatment offered was "satanic." You shared that you were going to sue me and own my home. You shared that you planned to continue to tell others about the satanic basis of treatment and that when you won your lawsuit and NDCS could no longer provide treatment for sexual offenses, it would be on my head when others recidivated sexually and harmed others.

CSORT has considered all of this information and believe that your behaviors are disruptive to the group process and to your own treatment. CSORT is terminating you from o-help treatment at this time, but the recommendation remains in place. You can be considered for re-entry to o-help 90 days from the date on this letter by sending an IIR to Dr. Melvin or to CSORT in general. At that time, a CSORT member would meet with you to assess your readiness to participate in treatment meaningfully. As you know, not completing recommending treatment impacts work release and parole options.

If you have any additional questions, you may send an Inmate Interview Request to Jeff Melvin, Ph.D. at NSP.

Scott R. Frakes, Director
**Dept of Correctional Services**

P.O. Box 94661 Lincoln, NE 68509-4661
Phone: 402-471-2654  Fax: 402-479-5623

**corrections.nebraska.gov**

E2

# NEBRASKA

## Good Life. Great Communities.



**NEBRASKA BOARD OF PAROLE**

**Pete Ricketts, Governor**

March 10, 2022

Elvis Hanes #213363
Omaha Correctional Center
Omaha, Nebraska

This is to advise you that the Board is in receipt of your letter on
February 25, 2022.

You are scheduled for a November 2022 Offender Review.

You can obtain an audio copy of your November Parole Hearing for a cost of $15.00.
This includes the handling fee. Also, attached is the reason why you're not being
considered for parole at this time. The Board will consider you for parole at your
November 2022 Offender Review.

In the meantime, please complete your Sex Offender Treatment Program and watch
your institutional behavior in order to be considered for parole.

Your letter will be placed in your permanent file.

Sincerely,

*Rosalyn Cotton*

**Rosalyn Cotton, Chairperson**
**Nebraska Board of Parole**

XC:   **Offender file**
      **Daily file**

**Nebraska Board of Parole**
PO Box 94754
Lincoln, NE 68509-4754
Phone: (402) 471-2156
Fax: (402) 471-2453

E3

Ex. 4

3-26-22

To: Nebraska Board of Parole

From: Elvis Hayes #213363
Omaha Correctional Center
Omaha Nebraska

To whom it may concern, I am requesting a review by the majority of the board at the earliest time in which you can convene for such. As the record reflects, I am eligible for release on parole on May 13, 2022 and I am requesting to be considered for such.

    I am in receipt of the letter from Rosalyn Cotton dated: March 10, 2022. As per the letter, and my Nov 2021 hearing, I was deferred for a Nov 2022 review in lieu of completing NDCS program reccomendations. Chairperson Cotton in her March 10, 2022 letter stated "In the meantime, please complete your Sex Offender Treatment Program and watch your institutional behavior in order to be considered for parole."

    I have further investigated the program reccomended and have found the very foundations of it to be directly contrary to my religious beliefs. Namely and more specifically, the Dialectic Behavioral therapy skills. I will elaborate a few

E4, PG1

Ex. 4

examples for the board's edification: The
DBT author and creator, Marsha M Linehan
states in the "DBT Skills Training Manual"
(second edition) that she is a "Zen Master"
and that her development of the
"Mindfullness skill" was a result of her
years in Catholic schools, Contemplative
Prayer studies at the Shalem Institute
and her 37 years as a Zen student
and now Master of Zen.
   She states in chapter seven (7) that
mindfulness is the "core" of the DBT
Skills. So a reasonable person can
conclude that the whole DBT skills
training is based on Marsha Linehan's
religious beliefs and not her
training in psychopathology as per
her own admission.
   Throughout the DBT skills are references
to mindfulness, acceptance, observance, and
even what I can only conclude as the
deity of DBT, some thing called "Wise Mind"
   On the "Mindfulness Handout 3a"
it literally says "Ask Wise Mind and
wait for an answer" and then goes

E4, PG. 2

further and says "If no answer comes, ask Wise Mind again later"

In the pages of "Mindfulness Handout 4A" at number sixty (60) it says "To yourself, make a statement "I feel the chair, the chair feels me..." It goes on to imply that a heater, a wall, and a stomach have some sentient awareness.

There are references to "connection to the universe" and the "third eye" as well as many other esoteric and mystic references throughout the DBT skills. The training Manual mentions Buddhism and Zen more than I can reference in a short synopsis.

I have asked CSORT to provide me with a secular option to the OhIp program to satisfy NDCS reccomendations but they have vehemently refused to even entertain the idea. Further, they have refused to show one iota of concern for the mental and spiritual health of those whom have already, are currently, and may in the future be subjected to OhIp. On the one hand a person can ~~forgo~~ forego their religious beliefs and "voluntarily" be subject to

Marsha Linehan's religious based program to recieve parole or work release, or a person can hold firm in their right of religious conscience and forego those non trivial benefits. I have to maintain my responsibility not just because of my personal faith, but because I am the spiritual role model of two teenagers whom I have always only asked that they obey God first.

I ask to be considered for May 2022 release based on the record herein. My institutional behavior has been unsmudged for nearly six months at the time of this letter. I have been not only rule abiding, but I have been the first to help with any duties in my assigned units and I have been the pen and reader of several inmates whom cannot read or write. I have written Kites to get people with illness or disabilities necessary items like wheelchairs or bottom bunk passes to name just a few.

I don't do or mention these

E4, PG4

Ex. 4

things because I want reccognition, if
you deny my request herein, I will still
do such charities. I only mention them
because I want to show that I am
not institutionalized, this place didn't
change me for the worse like it does
so many. I believe that the
circumstances do not make the
man, they reveal him.
    My children and family needs
me out there so I ask to be
considered for release based on
these facts
        Sincerely

## DISTRESS TOLERANCE HANDOUT 15



(Distress Tolerance Worksheets 8, 8a, 12)

# Mindfulness of Current Thoughts

---

### 1. OBSERVE YOUR THOUGHTS.

- As waves, coming and going.
- Not suppressing thoughts.
- Not judging thoughts.
- Acknowledging their presence.
- Not keeping thoughts around.
- Not analyzing thoughts.
- Practicing willingness.
- Stepping back and observing thoughts as they run in and out of your mind.

---

### 2. ADOPT A CURIOUS MIND.

- Ask, "Where do my thoughts come from?" Watch and see.
- Notice that every thought that comes also goes out of your mind.
- Observe but do not evaluate your thoughts. Let go of judgments.

---

### 3. REMEMBER: YOU ARE NOT YOUR THOUGHTS.

- Do not necessarily act on thoughts.
- Remember times when you have had very different thoughts.
- Remind yourself that catastrophic thinking is "emotion mind."
- Remember how you think when you are not feeling such intense suffering and pain.

---

### 4. DON'T BLOCK OR SUPPRESS THOUGHTS.

- Ask, "What sensations are these thoughts trying to avoid?" Turn your mind to the sensation. Then come back to the thought. Repeat several times.
- Step back; allow your thoughts to come and go as you observe your breath.
- Play with your thoughts: Repeat them out loud over and over as fast as you can. Sing them. Imagine the thoughts as the words of a clown, as recordings getting all tangled up; as cute animals you can cuddle up to; as bright colors running through your mind; as only sounds.
- Try loving your thoughts.

---

From *DBT Skills Training Handouts and Worksheets, Second Edition,* by Marsha M. Linehan. Copyright 2015 by Marsha M. Linehan. Permission to photocopy this handout is granted to purchasers of *DBT Skills Training Handouts and Worksheets, Second Edition,* and *DBT Skills Training Manual, Second Edition,* for personal use and use with individual clients only. (See page ii of this packet for details.)

E5



# DISTRESS TOLERANCE HANDOUT 13

(Distress Tolerance Worksheets 8, 8a, 10)

## Willingness

**Willingness is readiness to enter and participate fully in life and living.**

---

### Find a WILLING RESPONSE to each situation.

Willingness is DOING JUST WHAT IS NEEDED:

- In each situation.
- Wholeheartedly, without dragging your feet.

Willingness is listening very carefully to your WISE MIND, and then acting from your WISE MIND.

Willingness is ACTING WITH AWARENESS that you are connected to the universe (to the stars, people you like and don't like, the floor, etc.).

---

### Replace WILLFULNESS with WILLINGNESS.

- Willfulness is **REFUSING TO TOLERATE** the moment.
- Willfulness is refusing to make changes that are needed.
- Willfulness is **GIVING UP.**
- Willfulness is the **OPPOSITE OF "DOING WHAT WORKS."**
- Willfulness is trying to **FIX EVERY SITUATION.**
- Willfulness is insisting on **BEING IN CONTROL.**
- Willfulness is **ATTACHMENT TO "ME, ME, ME"** and "what I want right now!"

---

### WILLINGNESS, STEP BY STEP

1. **OBSERVE** the willfulness. Label it. Experience it.
2. **RADICALLY ACCEPT** that at this moment you feel (and may be acting) willful. You cannot fight willfulness with willfulness.
3. **TURN YOUR MIND** toward acceptance and willingness.
4. Try **HALF-SMILING** and a **WILLING POSTURE.**
5. When willfulness is immovable, **ASK, "WHAT'S THE THREAT?"**

---

### Situations where I notice my own:

Willfulness: _____

Willingness: _____

---

From *DBT Skills Training Handouts and Worksheets, Second Edition,* by Marsha M. Linehan. Copyright 2015 by Marsha M. Linehan. Permission to photocopy this handout is granted to purchasers of *DBT Skills Training Handouts and Worksheets, Second Edition,* and *DBT Skills Training Manual, Second Edition,* for personal use and use with individual clients only. (See page ii of this packet for details.)

E6



# MINDFULNESS HANDOUT 3

(Mindfulness Worksheet 3; p. 83)

## Wise Mind:
## States of Mind



**Reasonable Mind Is:**

Cool

Rational

Task-Focused

When in *reasonable mind,* you are ruled by facts, reason, logic, and pragmatics. Values and feelings are not important.

**Wise Mind Is:**

The wisdom within each person

Seeing the value of both reason and emotion

Bringing left brain and right brain together

The middle path

**Emotion Mind Is:**

Hot

Mood-Dependent

Emotion-Focused

When in *emotion mind,* you are ruled by your moods, feelings, and urges to do or say things. Facts, reason, and logic are not important.

From *DBT Skills Training Handouts and Worksheets, Second Edition,* by Marsha M. Linehan. Copyright 2015 by Marsha M. Linehan. Permission to photocopy or download and print this handout is granted to purchasers of this book for personal use or for use with clients.

E7



## MINDFULNESS HANDOUT 4

(Mindfulness Worksheets 2–2c, 4–4b; pp. 78–82, 84–87).

# Taking Hold of Your Mind: "What" Skills

## OBSERVE

❑ **Notice your body sensations** (coming through your eyes, ears, nose, skin, and tongue).

❑ **Pay attention** on purpose, to the present moment.

❑ **Control your attention,** but not what you see. Push away nothing. Cling to nothing.

❑ **Practice wordless watching:** Watch thoughts come into your mind and let them slip right by like clouds in the sky. Notice each feeling, rising and falling, like waves in the ocean.

❑ **Observe both inside and outside yourself.**

## DESCRIBE

❑ **Put words on the experience.** When a feeling or thought arises, or you do something, acknowledge it. For example, say in your mind, "Sadness has just enveloped me," or "Stomach muscles tightening," or "A thought 'I can't do this' has come into my mind."

❑ **Label what you observe.** Put a name on your feelings. Label a thought as just a thought, a feeling as just a feeling, an action as just an action.

❑ **Unglue your interpretations and opinions** from the facts. Describe the "who, what, when, and where" that you observe. Just the facts.

❑ Remember, **if you can't observe it through your senses, you can't describe it.**

## PARTICIPATE

❑ **Throw yourself completely into activities of the current moment.** Do not separate yourself from what is going on in the moment (dancing, cleaning, talking to a friend, feeling happy or feeling sad).

❑ **Become one with whatever you are doing,** completely forgetting yourself. Throw your attention to the moment.

❑ **Act intuitively from Wise Mind.** Do just what is needed in each situation—a skillful dancer on the dance floor, one with the music and your partner, neither willful nor sitting on your hands.

❑ **Go with the flow.** Respond with spontaneity.

From *DBT Skills Training Handouts and Worksheets, Second Edition,* by Marsha M. Linehan. Copyright 2015 by Marsha M. Linehan. Permission to photocopy or download and print this handout is granted to purchasers of this book for personal use or for use with clients.

53

E8

## MINDFULNESS HANDOUT 3A (p. 1 of 2)

(Mindfulness Worksheet 3; p. 83)

# Ideas for Practicing Wise Mind

The mindfulness skills often require a *lot* of practice. As with any new skill, it is important to first practice when you don't need the skill. If you practice in easier situations, the skill will become automatic, and you will have the skill when you need it. Practice with your eyes closed and with your eyes open.

1. ☐ **Stone flake on the lake.** Imagine that you are by a clear blue lake on a beautiful sunny day. Then imagine that you are a small flake of stone, flat and light. Imagine that you have been tossed out onto the lake and are now gently, slowly, floating through the calm, clear blue water to the lake's smooth, sandy bottom.

   • Notice what you see, what you feel as you float down, perhaps in slow circles, floating toward the bottom. As you reach the bottom of the lake, settle your attention there within yourself.

   • Notice the serenity of the lake; become aware of the calmness and quiet deep within.

   • As you reach the center of your self, settle your attention there.

2. ☐ **Walking down the spiral stairs.** Imagine that within you is a spiral staircase, winding down to your very center. Starting at the top walk very slowly down the staircase, going deeper and deeper within yourself.

   • Notice the sensations. Rest by sitting on a step, or turn on lights on the way down if you wish. Do not force yourself further than you want to go. Notice the quiet. As you reach the center of your self, settle your attention there—perhaps in your gut or your abdomen.

3. ☐ **Breathing "Wise" in, "Mind" out.** Breathing in, say to yourself, "Wise"; breathing out, say "Mind."

   • Focus your entire attention on the word "wise," then, focus it again entirely on the word "mind."

   • Continue until you sense that you have settled into Wise Mind.

4. ☐ **Asking Wise Mind a question.** Breathing in, silently ask Wise Mind a question.

   • Breathing out, listen for the answer.

   • Listen, but do not give yourself the answer. Do not tell yourself the answer; listen for it.

   • Continue asking on each in-breath for some time. If no answer comes, try again another time.

*(continued on next page)*

From *DBT Skills Training Handouts and Worksheets, Second Edition,* by Marsha M. Linehan. Copyright 2015 by Marsha M. Linehan. Permission to photocopy or download and print this handout is granted to purchasers of this book for personal use or for use with clients.

E9, PG 1

## MINDFULNESS HANDOUT 3A (p. 2 of 2)



5. ❑ **Asking is this Wise Mind?** Breathing in, ask yourself, "Is this (action, thought, plan, etc.) Wise Mind?"

- Breathing out, listen for the answer.
- Listen, but do not give yourself the answer. Do not tell yourself the answer; listen for it.
- Continue asking on each in-breath for some time. If no answer comes, try again another time.

6. ❑ **Attending to your breath coming in and out, let your attention settle into your center.**

- Breathing in completely, notice and follow the sensations of your breath coming in.
- Let your attention settle into your center, at the bottom of your breath, at your solar plexus—*or*
- Let your attention settle in the center of your forehead, your "third eye," at the top of your breath.
- Keeping your attention at your center, exhale, breathing normally, maintaining attention.
- Settle into Wise Mind.

7. ❑ **Expanding awareness.** Breathing in, focus your awareness on your center.

- Breathing out, stay aware of your center, but expand awareness to the space you are in now.
- Continue on in the moment.

8. ❑ **Dropping into the pauses between inhaling and exhaling.**

- Breathing in, notice the pause after inhaling (top of breath).
- Breathing out, notice the pause after exhaling (bottom of breath).
- At each pause, let yourself "fall into" the center space within the pause.

9. ❑ **Other Wise Mind practice ideas:** _____

_____

_____

_____

_____

52

E9, PG2

## MINDFULNESS HANDOUT 4A (p. 4 of 4)

**Open your mind to your senses:**

57. ☐ Practice walking with your senses as wide open as you can make them.
    - Notice what you hear, see, and feel.
    - Notice what you feel when shifting your weight between each step.
    - Notice your body experience as you turn.

58. ☐ For one mouthful in a meal, pause with a spoonful or forkful of food.
    - Look at what you are going to eat, smell it, and listen to it. Then, when you are ready, put it in your mouth.
    - Note the taste, texture, temperature, and even the sound your teeth make in chewing your mouthful slowly.
    - Note the changes in its taste, texture, temperature, and sound as you chew it to completion.

59. ☐ Focus your mind on paying attention to each sensation that comes into your mind.
    - Attend to sensations of sight, smell, touch, hearing, and taste, or to the thoughts generated by your brain.
    - Notice sensations as they arise, and notice them as they fall away.
    - Let your mind focus on each sensation as it arises.
    - Notice each sensation with curiosity, allowing it to be. Examine the uniqueness of each sensation.

60. ☐ Be here. Be in the present now.
    - Take a moment to notice every sense you are aware of.
    - To yourself, make a statement, about each sense: "I feel the chair; the chair feels me." "I hear the heater; the heater hears me." "I see the wall; the wall sees me." "I hear a stomach growl; it hears me."

61. ☐ When a feeling arises within you, notice it—saying, for example, "A feeling of sadness is arising within me."

62. ☐ When a thought arises within you, notice it—saying, for example, "The thought 'It is hot in here' is arising within me."

63. ☐ Take just a moment of your time, and practice "nothing-to-do" mind.
    - Let yourself become completely aware of your present experience, noticing sensations and the space around you.

64. ☐ Find a small object, one you can hold in your hand. Place it in front of you on a table or in your lap. Observe it closely—first not moving it, and then picking it up and turning it over and around, looking at it from different angles and in different lights. Just notice shapes, colors, sizes, and other characteristics that are visible.
    - Then change your focus to your fingers and hands touching the object. Notice the sensations of touching the object; notice the texture, temperature, and feel of the object.
    - Put the object down. Close your eyes, and inhale and exhale deeply and slowly.
    - Then, with beginner's mind, open your eyes. With new vision, once again notice the object. With beginner's mind, open to feeling new textures and sensations, explore the object with your fingers and hands.
    - Put down the object, and once again focus your mind on inhaling and exhaling once.

65. Other: _____

E10

## MINDFULNESS HANDOUT 4C

(Mindfulness Worksheets 2–2c, 4–4b; pp. 78–82, 84–87)

# Ideas for Practicing Participating

**Participate with awareness of connection to the universe:**

1. ❏ Focus your attention on where your body touches an object (floor or ground, air molecules, a chair or armrest, your bed sheets and covers, your clothes, etc.). Try to see all the ways you are connected to and accepted by that object. Consider the function of that object with relation to you. That is, consider what the object does for you. Consider its kindness in doing that. Experience the sensation of touching the object, and focus your entire attention on that kindness until a sense of being connected or loved or cared for arises in your heart.

   *Examples:* Focus your attention on your feet touching the ground. Consider the kindness of the ground holding you up, providing a path for you to get to other things, not letting you fall away from everything else. Focus your attention on your body touching the chair you sit in. Consider how the chair accepts you totally, holds you up, supports your back, and keeps you from falling down on the floor. Focus your attention on the sheets and covers on your bed. Consider the touch of the sheets and covers holding you, surrounding and keeping you warm and comfortable. Consider the walls in the room. They keep out the wind and the cold and the rain. Think of how the walls are connected to you via the floor and the air in the room. Experience your connection to the walls that provide you with a secure place to do things. Go hug a tree. Think of how you and the tree are connected. Life is in you and in the tree and both of you are warmed by the sun, held by the air and supported by the earth. Try and experience the tree loving you by providing something to lean on, or by shading you.

2. ❏ Dance to music.

3. ❏ Sing along with music you are listening to.

4. ❏ Sing in the shower.

5. ❏ Sing and dance while watching TV.

6. ❏ Jump out of bed and dance, or sing before getting dressed.

7. ❏ Go to a church that sings, and join in the singing.

8. ❏ Play karaoke with friends or at a karaoke club or bar.

9. ❏ Throw yourself into what another person is saying.

10. ❏ Go running, focusing only on running.

11. ❏ Play a sport and throw yourself into playing.

12. ❏ Become the count of the breath, becoming only "one" when you count 1, becoming only "two" when you count 2, and so on.

13. ❏ Become a word as you slowly say the word over and over and over.

14. ❏ Take a class in improvisational acting.

15. ❏ Take a dance class.

16. Other: _____

From *DBT Skills Training Handouts and Worksheets, Second Edition,* by Marsha M. Linehan. Copyright 2015 by Marsha M. Linehan. Permission to photocopy or download and print this handout is granted to purchasers of this book for personal use or for use with clients.

E11

NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES

## INMATE INTERVIEW REQUEST

TO: _Mailroom_                    DATE: _4-3-22_

FROM: _Elvis Hanes_ _213363_    _OCC_    _JO-A20U_
NAME / NUMBER             FACILITY      LOCATION

WORK LOCATION: _____ UNIT STAFF: _____

MESSAGE: _Please send this to_

_John M Friend_
_Clerk of District Court_
_Hall of Justice_
_OMAHA NE 68183_

_Certified Return Reciept_

_And send ME Tracking Number_

_Thanks_

_Dr_

Signature

ORIGINAL -- DCS Employee
YELLOW -- Inmate
Both copies need to be submitted for response.

REPLY: _2.76_    _Postage_
_3.75_    _Certified Fee_
_3.05_    _Returned Green Card_
_$9.56_

_Tracking number_
_7009 1410 0002 5692 9070_

_4/4/2022_            _T. Tyler_
Date                     Signature

XCS-A-adm-013 - (rev. 1/2017)

E.12

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X _Andrea L_    ☐ Agent  ☐ Addressee

B. Received by ( *Printed Name* )    C. Date of Delivery
_Andrea L._

1. Article Addressed to:

John M Friend
Clerk of the District
Hall of Justice
1701 Farnam St
Omaha, Ne 68183

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☑ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)    ☐ Yes

2. Article Number
(*Transfer from service label*)    7005 1410 0002 5692 9070

Domestic Return Receipt    102595-02-M-1540

E. 13, p. 1

UNITED STATES POSTAL SERVICE 680
OMAHA NE

6 APR 2022 PM 3 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-

• Sender: Please print your name, address, and ZIP+4 in this box •

*Elvis Hanes 213363*  **2C 1U**

Received

OMAHA CORRECTIONAL CENTER
PO BOX 11099
OMAHA, NE 68111-0099

APR 08 2022

Omaha Correctional Center

E.13,P.2

**JOHN M. FRIEND**
**CLERK OF THE DISTRICT COURT**
DOUGLAS COUNTY
PAMELA CARDENAS, CHIEF DEPUTY
HALL OF JUSTICE / OMAHA, NEBRASKA 68183



Elvis Hanes #213363

Community Correction Center Omaha

2320 Avenue "J"

Omaha, NE 68110

Date: April 6, 2022

We are in receipt of your correspondence.  Please review the "X" below for response.

_____    The Case Number is: _____.
_____    Please provide a Douglas County District Court Case Number.

_____    We are unable to provide legal advice.  Please access the Supreme Court Website for further
          information and forms at:   https://supremecourt.nebraska.gov/self-help/welcome
_____    Please contact your attorney of record: _____ at: _____
                                                         (name)                        (phone number/email)

_____    Additional copies required.  You have more than one case and must provide filings for each case.
          (We cannot make copies for you.)

XXX    Certified Institution Account Statement for the last six (6) months required for all "In Forma
          Pauperis" cases.  (See attached letter.)
_____    A Vital Records Worksheet is required for a Dissolution of Marriage filing.  Access to the  electronic
          form is found at: http://dhhs.ne.gov/publichealth/Documents/HHS-73Worksheet.pdf    (Copy attached)

_____    Your case has been dismissed.

_____    The pleadings are being returned because they have not been properly signed. (Reference: §6-1111 on
          Signing of Pleadings. Must have: Signature, Signer's Address, Phone Number, and email address, if any.)

_____    Please Contact 402-444-_____

XXX    OTHER:

> We only need the original copy of the complaint/praecipe and Informa Pauperis
> Affidavit.  We don't need the extra copy you sent.

Sincerely,
Clerk of the District Court, Douglas County


(C) al

(S)_____

ENCLOSURES / Returned  Complaint/Praecipe/Informa Pauperies Affidavit

12/1/16 (Reply Form)

E. 14

NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES

## INMATE INTERVIEW REQUEST

TO: Mailroom                                    DATE: 4-11-22

FROM: Elvis Hanes 213363    OCC    J2C1u
NAME / NUMBER    FACILITY    LOCATION

WORK LOCATION: _____ UNIT STAFF: _____

MESSAGE: Please send Certified Return
Reciept To

Douglas County Clerk of District Court
John Friend

1701 Farnam St, 3rd floor

Omaha NE 68183

Please return this IRR with the
Tracking number, and return the
green card when it arrives

Thank you

_____
Signature

ORIGINAL – DCS Employee
YELLOW – Inmate
Both copies need to be submitted for response.

REPLY: Postage $ 3.16
Certified/R Reciept    6.71

9.87

7009 1410 0002 5692 9100

4/12/2022    T. Th
Date    Signature

DCS-A-adm-013 (rev. 1/2017)

E.15

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X *T Callahan*  ☐ Agent  ☐ Addressee

B. Received by (*Printed Name*)  *T Callahan*
C. Date of Delivery  *4-14-22*

1. Article Addressed to:

John Friend
Clerk of the District Court
1701 Farnam St
Omaha, NE 68183

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☒ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)  ☐ Yes

2. Article Number
(Transfer from service label)
7009 1410 0002 5892 9100

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

E. 16, P. 1

E. 16, P. 2

UNITED STATES POSTAL SERVICE

||||||

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Elvis Hanes  213368  
OCC
P.O. Box 11099
Omaha, Ne  68110-0099

Elvis Hane
2320 Avenue J
Omaha NE 68110

7009 1410 0002 5692 8349

quadient
FIRST-CLASS MAIL
IMI
$006.11 ⁰
04/20/2022 ZIP 68110
043M31232136
US POSTAGE

United States District Court
District of Nebraska
111 s. 18 Plaza #1152
Omaha NE 68102

RECEIVED

APR 2 2 2022

CLERK
U.S. DISTRICT COURT

Legal Mail / Confidential

Legal Mail / Confidential