IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ELVIS HANES, | **8:22CV156** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| SCOTT FRAKES, Director of NDCS, personal and official capacity; ROSALYN COTTON, Chairman, Nebraska Board of Parole, personal and official capacity; LAYNE GISSLER, BOB TWISS, MARK LANGAN, and HABIB OLOMI, members, Nebraska Board of Parole, personal and official capacities; and JOHN M. FRIEND, clerk of the Douglas County District Court, personal and official capacity, | |
| Defendants. | |

Plaintiff, a state prisoner, filed his pro se Complaint on April 22, 2022 (Filing 1), and has paid the district court's filing and administrative fees. The court will now conduct an initial review of the Complaint pursuant to 28 U.S.C. § 1915A.

## I. STANDARDS ON INITIAL REVIEW

The court is required to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C.A. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds

for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## II. SUMMARY OF COMPLAINT

Plaintiff alleges he was convicted of attempted first degree sexual assault and on June 16, 2021, was sentenced to 2 to 4 years' imprisonment with the Nebraska Department of Correctional Service ("NDCS"). Plaintiff was assigned to the Omaha Correctional Center ("OCC"). On October 4, 2021, about one month after his arrival at the OCC, Plaintiff was recommended for outpatient alcohol treatment following his release from prison. After another month, the Clinical Sex Offender Review Team ("CSORT") recommended that Plaintiff participate in the Outpatient Healthy Lives Program ("oHeLP"). When Plaintiff went before the parole board on November 15, 2021, he was told he needed to complete oHeLP to be considered for parole. Plaintiff enrolled in the program but found the curriculum, particularly its Dialectical Behavioral Therapy ("DBT") skills training program, to be offensive to his religious beliefs. Plaintiff objects to DBT "mindfulness skills," which allegedly are "psychological and behavioral translations of meditation practices from Eastern spiritual training." (Filing 1 at 1-2.)

2

When Plaintiff met with the head of CSORT, Dr. Jeff Melvin, on February 11, 2022, to conduct his oHeLP pretreatment assessment, he expressed his religious objections and was warned by Dr. Melvin that further objections would result in a failure to complete the program. Plaintiff filed a grievance and sent a letter to the Parole Board, but obtained no relief. Plaintiff started oHeLP on March 7, 2022, but continued to express objections to the program. On March 15, 2022, Plaintiff was required to sign an agreement stating that he would not file more grievances or seek counseling outside of oHeLP facilitators. On March 23, 2022, Plaintiff was notified he was officially removed from oHeLP but the recommendation would remain in place; Plaintiff was also told he could apply for readmission in 90 days. Plaintiff then sent a request to the Parole Board that he be considered for release on May 13, 2022, because of CSORT's refusal to remove the oHeLP recommendation or to offer a secular alternative. (Filing 1 at 2-3.)

Named as Defendants are the NDCS Director, Scott Frakes, the Chairperson of the Parole Board, Rosalynn Cotton, and four other Board members, Layne Gissler, Bob Twiss, Mark Langan, and Habib Olomi. All Defendants are sued in their official and individual capacities, but Plaintiff requests only "injunctive relief requiring the Nebraska Department of Correctional Services to remove the oHelp [sic] treatment program from his institutional file; to enjoin the Board of Parole from considering any programming recommendations not imposed as part of a sentence; and to grant [Plaintiff] a parole hearing on or around May 13, 2022." (Filing 1 at 11.) Plaintiff further requests that "NDCS, under the direction of Scott Frakes, be enjoined from promoting the oHelp and iHelp programs and any other programs that rely upon the principals [sic] of spirituality and philosophy encouraged by the DBT Skills Training foundational system." (Filing 1 at 11.)

Plaintiff also alleges he filed a complaint and request for injunctive relief, similar to the present action, in the District Court of Douglas County, Nebraska, on April 14, 2022, but the Clerk of the Court, Defendant John M. Friend, claims to have no knowledge of this filing. Plaintiff alleges this is untrue, and that Mr. Friend is denying Plaintiff's right of access to the courts. (Filing 1 at 9-10.) For this claim, Plaintiff requests an award of damages in the amount of $1 million. (Filing 1 at 11.)

3

## III. MISJOINDER OF CLAIMS

While a plaintiff may join in one action as many claims as he has against a single defendant, *see* Fed. R. Civ. P. 18(a), "[i]n actions where more than one defendant is named, such as the one at bar, the analysis under Rule 20 precedes that under Rule 18." *Houston v. Shoemaker*, No. 2:16-CV-36-CDP, 2017 WL 35699, at *2 (E.D. Mo. Jan. 4, 2017). Rule 20 provides in part: "Persons ... may be joined in one action as defendants if ... any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and ... any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Thus, "[d]espite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action *only if* plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. Westlaw 2022) (emphasis added). "Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a)… Thus, for example, the joinder of defendants has been denied when there were no allegations that the defendants acted in concert …." *Id*., at § 1653.

Plaintiff's claim against the Clerk of the Douglas County District Court does not arise out of the same transactions or occurrences as Plaintiff's claims against the NDCS Director or Parole Board members, nor does it involve common questions of law or fact.

Although courts construe pro se pleadings liberally, pro se litigants, like all other parties, must abide by the Federal Rules of Civil Procedure. *See, e.g., Williams v. Harmon*, 294 Fed. App'x 243, 245 (8th Cir. 2008) (affirming dismissal where pro se litigant failed to comply with the Federal Rules of Civil Procedure). "Requiring *pro se* prisoners to adhere to the federal rules regarding joinder of parties and claims prevents 'the sort of morass [a multiple claim, multiple defendant] suit produce[s],' avoids confusion, ensures that prisoners pay the required filing fees, and prevents prisoners from circumventing the PLRA's three strikes rule." *Evans v. Deacon*, No. 3:11-CV-00272-ST, 2016 WL 591758, at *7 (D. Or. Feb. 12, 2016) (quoting *George*

*v. Smith*, 507 F.3d 605, 607 (9th Cir. 2007)) (citations omitted).[1] Unrelated claims involving different defendants belong in different suits. *George*, 507 F.3d at 607.

"Misjoinder of parties is not a ground for dismissing an action," but the court on its own may "drop a party" or "sever any claim against a party" in order to eliminate the misjoinder. Fed. R. Civ. P. 21. If the court were to "sever" the claim against Defendant Friend, it would need to open a second case and Plaintiff would be responsible for payment of an additional filing fee. *See In re Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997) ("The PLRA [Prison Litigation Reform Act] makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal"). For Plaintiff's benefit, the court will instead "drop" Defendant Friend from the action by dismissing the claim against him without prejudice, and Plaintiff can decide if he wishes to file a second lawsuit. Thus, in reviewing Plaintiff's Complaint under 28 U.S.C. § 1915A, the court will not consider whether a plausible claim for relief is stated against Defendant Friend.

## IV. PLAINTIFF'S CLAIMS AGAINST NDCS DIRECTOR AND PAROLE BOARD MEMBERS

This is a civil rights action brought under 42 U.S.C. § 1983 for injunctive relief against the NDCS Director and members of the Nebraska Board of Parole. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state

---

[1] Under provisions of the Prison Litigation Reform Act ("PLRA"), a prisoner may not commence a civil action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F. 3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F. 3d 596, 603 (6th Cir. 1998).

law. *West v. Atkins*, 487 U.S. 42, 48 (1988).[2] Plaintiff claims NDCS "has recommended that [he] participate in state-sponsored and endorsed religious and philosophical indoctrination, or the Nebraska Board of Parole will deny him parole in violation of his rights under the 1st, 6th, and 14th Amendments to the Constitution of the United States, and Article 1, §§ 4 and 11 of the Constitution of the State of Nebraska."[3] (Filing 1 at 3.) Essentially, Plaintiff is claiming that oHeLP violates the Establishment Clause of the First Amendment and imposes a penalty without prior notice in violation of the Fourteenth Amendment's Due Process Clause.

A. Due Process Claim

"[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, Plaintiff must demonstrate that he has been deprived of a liberty interest in order to successfully claim that his Fourteenth Amendment right to due process has been violated. *See Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). A liberty interest can arise out of the Due Process Clause itself or be state-created. *Id.* (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

The general rule is that "the Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Id.* at 808 (quoting *Sandin*, 515 U.S. at 480 (cleaned up)). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration

---

[2] Plaintiff also cites 42 U.S.C. §§ 1985 and 1986, but his allegations fail to show the existence of the necessary class-based "invidiously discriminatory animus." *See Larson ex rel. Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (en banc) (discussing 42 U.S.C. § 1985); *Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998) (to maintain 42 U.S.C. § 1986 action, defendant must have actual knowledge of § 1985 conspiracy).

[3] Article I, § 4 of the Nebraska Constitution guarantees religious freedom, and § 11 provides certain procedural rights to an accused in a criminal prosecution. For purposes of initial review, it will be presumed that Plaintiff's rights under these provisions are coextensive with his rights under the First and Sixth Amendments, as made applicable to the States by the Fourteenth Amendment.

of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "A state may, as Nebraska has, establish a parole system, but it has no duty to do so. Moreover, to insure that the state-created parole system serves the public-interest purposes of rehabilitation and deterrence, the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority." *Id.* at 7-8 (footnotes omitted). "That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained." *Id*. at 11 (emphasis in original). The inmate's general interest in being paroled "is no more substantial than the inmate's hope that he will not be transferred to another prison, a hope which is not protected by due process." *Id.*

The Supreme Court in *Greenholtz* also analyzed Nebraska's parole statutes and found they did not give rise to a protectible liberty interest. That is still the case. "[I]n Nebraska, taking advantage of self-improvement opportunities is only one among a multitude of factors that the Nebraska Board of Parole considers in determining if a prisoner should be paroled." *Kosiski v. Frakes*, No. 8:16CV345, 2017 WL 401826, at *3 (D. Neb. Jan. 30, 2017); *see* Neb. Rev. Stat. § 83-1,114(2)). "Failure to complete a personalized program plan may be considered by the Nebraska Board of Parole as a factor in its decision, but denial of parole on those grounds is not mandatory." *Id.*; *see* Neb. Rev. Stat. § 83-1,107(1)(b).

Because Plaintiff does not have a liberty interest in being granted parole, his due process claim fails as a matter of law. *See id.*, 2017 WL 401826, at *4 ("The adverse consequences of CSORT's decision to terminate Plaintiff from oHeLP were insufficient to confer a liberty interest for due process purposes.").[4]

## B. First Amendment Claim

In *Lee v. Weisman,* 505 U.S. 577 (1992), the Supreme Court emphasized that, "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Id.* at 587, 588-99. The Eighth Circuit has indicated that the *Lee* coercion test should also be applied in the prison

---

[4] The plaintiff in *Kosiski* claimed he was terminated from oHeLP without procedural due process. Although the court's decision in that case did not address whether denying a prisoner parole for failure to complete oHeLP would violate due process, the "liberty interest" analysis is the same.

context to assess the constitutionality of requiring or conditioning benefits on attendance at potentially religious treatment programs. *Jackson v. Nixon*, 747 F.3d 537, 541-43 (8th Cir. 2014) (citing cases).

In *Jackson*, the Eighth Circuit adopted a three-part test to evaluate a prisoner's claim that a parole stipulation requiring him to attend and complete a substance abuse program ("OUTP") with religious content in order to be eligible for early parole violated the First Amendment's Establishment Clause. The Court of Appeals inquired: "first, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious or secular?" *Id.* at 542 (quoting *Kerr v. Farrey,* 95 F.3d 472, 479 (7th Cir. 1996)). The first prong was undisputed, and for purposes of reviewing a pre-service dismissal the Court accepted the truth of the prisoner's allegations that the program contained some religious content. The plausibility of the prisoner's claim therefore hinged upon the second prong of whether the state's action constituted coercion. The Court concluded sufficient facts were alleged to state a claim upon which relief could be granted. It explained:

> The state argues that participation in OUTP was optional and, as a result, not coerced. Assuming the truth of the facts pled in Jackson's pro se complaint, however, he believed himself required to complete it based on a parole stipulation. The parties agree that even if Jackson had completed the substance abuse treatment program, he would not have been guaranteed early parole. Under Missouri law, compliance with the parole stipulation meant that Jackson's case would be referred to the Missouri Board of Probation and Parole, and the Board would then consider his potential early release…. Jackson's progress toward early parole did, however, stop when he left the substance abuse treatment program.

> Based on the existing record, it is also unclear whether the state would have permitted Jackson to remain in, and graduate from, OUTP if he refrained from actively participating in only the faith-based portions of the curriculum. Even if the state had allowed Jackson to sit quietly during the prayers and other religious components, however, the state's action may still amount to coercion….

> While inmates have no constitutional right to early parole, Jackson does have the right to be free from unconstitutional burdens when availing himself of existing ways to access the benefit of early

parole. The fact that Jackson did not have a constitutional right to, or statutory guarantee of, early parole does not preclude him from stating a claim of unconstitutional coercion.… The Missouri Board of Probation and Parole may have discretion in deciding whether to grant early parole to an OUTP graduate, but that fact alone does not shield the defendants from potential liability for implementing a program that is alleged to violate the First Amendment.

*Id.* at 542-43 (citation omitted).

Similarly, in the present cases, Plaintiff has alleged that oHeLP has certain religious elements and that he will not be eligible for parole unless he completes the program. Thus, he has sufficiently pleaded a First Amendment violation.

The Eleventh Amendment bars claims for damages that are brought in federal court by private parties against a state, a state instrumentality, or a state employee who is sued in his or her official capacity. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995)); *see also Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021) ("Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity."). However, under the exception established in *Ex parte Young*, 209 U.S. 123 (1908), a private party may sue state officials in their official capacities for prospective injunctive relief. *McDaniel v. Precythe*, 897 F.3d 946, 951-52 (8th Cir. 2018) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md.*, 535 U.S. at 645 (alteration in original) (quoting *Coeur d'Alene*, 521 U.S. at 296). The court construes Plaintiff's Complaint as alleging an ongoing First Amendment violation and seeking only prospective injunctive relief.

It has been held that "section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." *Greenwalt v. Indiana Dept. of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005); *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity

9

defendants only for injunctive relief.") (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)); *Wolfe v. Strankman*, 392 F.3d 358, 360 n. 2 (9th Cir. 2004) (noting that injunctive and equitable relief are not available in § 1983 individual-capacity suits); *Yul Chu v. Mississippi State University*, 901 F. Supp. 2d 761, 771 (N.D. Miss. 2012) (concluding that Eleventh Amendment bars injunctive relief against individual defendants sued in their personal capacity); *Munt v. Schnell*, No. 18-CV-3390 (DWF/ECW), 2020 WL 1695420, at *9 (D. Minn. Jan. 31, 2020) (same), *report and recommendation adopted*, No. CV 18-3390 (DWF/ECW), 2020 WL 968353 (D. Minn. Feb. 28, 2020), *aff'd*, No. 20-1594, 2020 WL 5588650 (8th Cir. Aug. 7, 2020). Because Defendants do not have authority *in their individual capacities* to remove the oHeLP recommendation from his institutional file, to modify the program, to consider Plaintiff's parole eligibility, or to otherwise act on behalf of NDCS or the Parole Board, the individual-capacity claims against Defendants will be dismissed without prejudice.[5] *See Hummel v. Minnesota Dep't of Agric.*, 430 F. Supp. 3d 581, 593 & n. 5 (D. Minn. 2020) (damages was only relief obtainable from individual-capacity defendants).

## V. SERVICE OF PROCESS

Plaintiff has filed a praecipe for summons (Filing 4) in which he requests the Clerk of the Court to issue a summons for each Defendant and to direct the U.S. Marshal to serve the summonses. Treated as a motion, this request will be denied because the requested service is inconsistent with this Memorandum and Order, and because it does not reflect an understanding by Plaintiff that, since he has not been granted leave to proceed in forma pauperis, he is responsible for arranging for service of process and paying any service fees. The court will instead direct the Clerk of the Court to issue summonses only for Defendants Scott Frakes, Rosalynn Cotton, Layne Gissler, Bob Twiss, Mark Langan, and Habib Olomi, *in their official capacity only*, and to send the signed summons forms to Plaintiff, who will be responsible for serving Defendants in the manner provided by law. *See* Fed. R. Civ. P. 4.

---

[5] While Eleventh Amendment immunity does not bar damage claims against state officials who are sued in their individual capacity, Plaintiff does not request such relief (except for the claim against John M. Friend, which is being dismissed for misjoinder).

Because Plaintiff has not been granted leave to proceed in forma pauperis, he is not entitled to have service made by the U.S. Marshal. *See Hill v. Stun Tech, Inc*., 104 Fed. Appx. 686 (9th Cir. 2004); *Hatten v. United States*, No. 4:21-CV-2912-JFA-TER, 2022 WL 611501, at *2-3 (D.S.C. Mar. 2, 2022); *White v. Hill*, No. 21-CV-2348 (FYP), 2021 WL 8055764, at *3-4 (D.D.C. Dec. 29, 2021); *Ezzard v. Ajibade*, No. CV 314-141, 2015 WL 1880293, at *2-6 (S.D. Ga. Apr. 24, 2015).

"Federal Rule of Civil Procedure 4(c)(3) does give the court discretion, '[a]t the plaintiff's request,' to order that service be made by a United States marshal, even when a plaintiff does not qualify to proceed in forma pauperis." *Yates v. Baldwin*, 633 F.3d 669, 672 (8th Cir. 2011). Although Plaintiff's Filing 4 includes a request for service of summons by the U.S. Mashal, Plaintiff may have been under the mistaken impression that he was entitled to such service with the assistance of the Clerk of the Court and without payment of service fees. The court's denial of Filing 4 will not preclude Plaintiff from submitting a request under Rule 4(c)(3) for court-ordered service if that is still his preference.

The court advises Plaintiff, however, that if he elects to make this request, the court will grant the request only if the request is made promptly and in written form. Furthermore, Plaintiff must confirm in writing, within the written request itself, that he understands that the U.S. Marshals Service is required by statute to charge him for making or attempting service. *See* 28 U.S.C. § 1921(a) ("The United States marshals or deputy marshals shall routinely collect, and a court may tax as costs, fees for" serving summonses, complaints, or any other process.) The court also advises Plaintiff that under 28 U.S.C. § 1921(d), the U.S. Marshals Service "may require a deposit to cover the fees and expenses prescribed" under § 1921; the remainder of the fees and expenses will either be collected by the Marshals Service or taxed as costs by the Court, § 1921(a)(1).

Therefore, if Plaintiff chooses to request court-ordered service, he must (1) advise the court in writing within 30 days (this writing should include the written confirmation of his willingness to pay the Marshals Service fees as specified above), and (2) submit a properly completed U.S. Marshals Service Form (Form USM-285) for Defendants. U.S. Marshals Service Forms will be provided to Plaintiff by the Clerk of Court upon request.

11

If Plaintiff decides to attempt to serve Defendants without the assistance of the Marshals Service, he will need summonses issued for Defendants. The Court will direct the Clerk of Court to issue Plaintiff those summonses at this time.

Plaintiff will be responsible for supplying copies of the Complaint for service on each Defendant (if he chooses to serve Defendants without the assistance of the Marshals Service).

## VII. CONCLUSION

Plaintiff's claim against the Clerk of the Douglas County District Court is improperly joined with his claims against the NDCS Director and members of the Nebraska Board of Parole. Plaintiff's due process claim fails a matter of law because he does not have a liberty interest in obtaining parole. Plaintiff has alleged a plausible § 1983 claim for violation of his rights under the First Amendment's Establishment Clause and may pursue this claim for prospective injunctive relief against the NDCS Director and members of the Nebraska Board of Parole in their official capacity only.

IT IS THEREFORE ORDERED:

1.  This case may proceed to service of process on Plaintiff's First Amendment Establishment Clause claims against Defendants Scott Frakes, Rosalynn Cotton, Layne Gissler, Bob Twiss, Mark Langan, and Habib Olomi, *in their official capacity only*.

2.  All other claims are dismissed without prejudice. The Clerk of the Court is directed to remove "John M. Friend" as a defendant to this action.

3.  For service of process of process on Defendants Scott Frakes, Rosalynn Cotton, Layne Gissler, Bob Twiss, Mark Langan, and Habib Olomi, in their official capacity, the Clerk of the Court is directed to complete a summons form for each Defendant using this service address:

> Office of the Nebraska Attorney General
> 2115 State Capitol
> Lincoln, NE 68509

4. The clerk of the court shall forward the signed summons forms and one copy of this Memorandum and Order to Plaintiff.

5. Any request for court-ordered service by the Marshals Service must be filed within 30 days and must include confirmation by Plaintiff that he understands the Marshals Service is required by statute to charge him for making or attempting service and may require an advance deposit.

6. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

7. The clerk of the court is directed to set the following pro se case management deadline: "August 24, 2022: check for service."

8. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 26th day of May 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge